Matthew M. Levy, J.
The plaintiff moves for summary judgment. The defendant also moves for summary judgment, or, in the event that that application is denied, for consolidation of *152 this action with an action pending in Nassau County where the parties are in reverse. The plaintiff had moved for summary judgment on the original answer and, since notice of that motion was served, the defendant served an amended answer which contains a counterclaim. That counterclaim is in all respects the claim of this defendant as plaintiff against this plaintiff as defendant in the Nassau action, and, accordingly, by separate motion, this plaintiff moves for dismissal of the counterclaim upon the ground of prior action pending. Dismissal of the counterclaim in pursuance of that motion was consented to on the argument. That leaves us with the motion and cross motion for summary judgment in the New York County action, and with the defendant’s alternate cross motion for consolidation of the New York County action with the Nassau County action.
It appears that the defendant was the plaintiff’s employer. The defendant owed the plaintiff $13,688.02. The defendant entered into a Chapter XI Bankruptcy Act arrangement with all of his creditors, and, upon approval of the amended plan therein, an order was made by the United States District Court, dated May 2, 1958. Under such plan and order each creditor of a particular class■—the defendant’s employees, including this plaintiff—received 5% in cash, with the balance payable 1% a month until the indebtedness due him was fully paid, such monthly payments to commence one month after the entry of the order. It was further provided that, in the event the debtor failed to make any monthly payments when due and the default continued for 15 days, then all monthly payments at the option of the creditors became due and payable. The defendant paid plaintiff a total of $2,600.72 on account. When the August 2, 1959, payment of $136.88 due the plaintiff was not made, notice in writing was given to the defendant of the default and of the plaintiff’s exercise of election to accelerate. Such notice was given on August 20 (the grace period of 15 days ended on August 17). Thereafter this action was commenced to recover the full amount of the indebtedness, $11,087.30, and, as I have said, the plaintiff seeks now to obtain summary judgment thereon.
The defendant, in response, says that the total sum is not due. It appears that on August 21 a check dated that date was sent by the defendant to the plaintiff. The latter claims to have received the check on August 28 or 29. The plaintiff returned it to the defendant on August 31. The defendant insists that the check dated August 21 was mailed out before it received from the plaintiff his notice of August 20. It seems to me out of customary experience that an August 21 local mailing would not be *153 received until August 28. But I cannot say that it has not happened, or that it did not occur here. Of course, the issue would be easily disposable if the plaintiff had retained the envelope in which the August 21 check had been received—but that apparently was not done. After these incidents, the defendant did, in September, make due and timely payment of the September 2 installment, which the plaintiff also rejected. In all the circumstances, as I find them, a triable issue has been raised with respect to the question as to whether there was in fact a default; that is, whether the defendant mailed a check in payment of the August 2 installment prior to the receipt by it of the plaintiff’s notice of his exercise of the option to accelerate. (3 Williston, Contracts [rev. ed., Williston and Thompson], § 853, p. 2393.)
There are additional considerations urged by the defendant based upon the provisions in the decreed_ Chapter XI arrangement. On the one hand, in case of a 15-day default by the debtor on any monthly installment, £i then all of the monthly payments shall, at the option of the said creditors, become due and payable ” pronto. On the other hand, there is a further clause whereby the debtor was given the option ££ to pay to said creditors, at any given time, 33%% of the unpaid balance due at the time of the exercise of the option of the sums due said creditors.” From this, it is argued that a default with respect to a single creditor does not give him the personal right to accelerate, but that the right of acceleration in case of such lone default is in all of the creditors. This may seem a strained construction. Yet, it has a significant point (which is further urged by the defendant) to the effect that the plaintiff’s contention is onerous and burdensome and inequitable, in that, after making monthly payments to all of the creditors from June, 1958, to August, 1959, the debtor will be deprived, on the basis of an unintentional default of one installment to one creditor, of the right in the future to make prepayment in full at 33%%, and that, if this plaintiff now recovers the full indebtedness, other creditors may not have the same advantage. In respect of this discussion, I am reminded of the doctrine laid down in Graf v. Hope Bldg. Corp. (254 N. Y. 1 [Cardozo, J., writing for the minority]) to the effect that generally it is neither oppressive nor unconscionable to insist upon performance of a valid contract as made. But I also note efforts to soften its rather strict view (Domus Realty Corp. v. 3440 Realty Co., 179 Misc. 749, affd. 266 App. Div. 725; Wedab Corp. v. Weinger, 283 App. Div. 877).
*154 The motions for summary judgment are both denied and we come to the defendant’s alternate motion for consolidation. This motion is also denied. The actions have nothing to do with each other and have no common question of fact or law. (Cf. Denton v. Koshfer, 201 Misc. 394, 397.) The plaintiff’s action in New York County arises from the composition arrived at through the Chapter XI reorganization. The question here is whether the debt owing by the defendant to the plaintiff is or is not owing now in full. In the suit instituted by the defendant against this plaintiff in Nassau County, this defendant claims that the plaintiff, while an officer of the defendant and in the defendant’s employ, converted corporate moneys. The Nassau County action is what would ordinarily be a derivative stockholders’ suit, except that, in this instance, it is brought by the corporation against its allegedly offending officer as an action in tort for claimed conversion. In view of the nature of the Nassau County suit—where the instant plaintiff is charged with misappropriation and embezzlement—it would be prejudicial to the plaintiff to have the issue here — one of a debtor-creditor relationship under the terms, of the Chapter XI plan arrangement — confused with the claims presented by the defendant arising out of the employer-employee relationship antedating the bankruptcy proceedings. It is interesting to observe, as the plaintiff points out, that the defendant became aware of the plaintiff’s alleged defalcations in July, 1958, and nevertheless continued to make monthly payments under the reorganization plan, and indeed insists upon its continued right (and duty) to make such payments.
Orders have been signed and entered disposing of the several motions in consonance with the foregoing opinion.